UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE IMBRUNONE,

     Plaintiff,

                                    Civil Case No. 22-12346
v.                                  Honorable Linda V. Parker

SCHOOL DISTRICT OF
THE CITY OF HAMTRAMCK, et al.,

     Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT, HAMTRAMCK FEDERATION OF TEACHERS' MOTION TO DISMISS (ECF NO. 25)

Michelle Imbrunone ("Plaintiff") initiated this civil rights lawsuit due to her termination of employment against the following Defendants: School District of the City of Hamtramck ("School District"); certain members of the Board of Education of the School District: Evan Major, Salah Hadwan, Moortadha Obaid, Showcat Chowdhury, and Regan Watson (collectively, "School Board Defendants"); and the Hamtramck Federation of Teachers, AFL-CIO ("HFT"). (ECF No. 1.)  On January 4, 2023, Plaintiff filed an Amended Complaint against the same parties alleging numerous claims under federal and Michigan law. (ECF No. 21.)

The matter is presently before the Court on "Defendant, Hamtramck Federation of Teachers' Motion to Dismiss Per Fed. R. Civ. P. 12(b)(6)" (ECF No. 25.) The motion is fully briefed. (ECF Nos. 28, 31.) Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting in part and denying in part Defendant's motion.

## STATEMENT OF FACTS

HFT is a teacher's union that acts as the exclusive bargaining representative for all teachers employed by the School District. In January 2020, Plaintiff was hired by the School District to serve as its Director of Human Resources. In this role, Plaintiff was supervised by the Superintendent of Schools, Jaleelah Ahmed (" Ahmed"). Upon Plaintiff's hiring, she signed an employment contract, which included the following provisions:

> A. The initial term of the contract was January 6, 2020 through June 30, 2022;
> B. An additional year was added to the contract each year her evaluation was satisfactory;
> C. Her employment would not be terminated except for reasons that were not arbitrary or capricious; and,
> D. A paragraph entitled "Binding Arbitration" . . . .

(ECF No. 21 ¶ 21, Pg ID 428.) For the 2019–2020 school year, Plaintiff received an "effective" rating on her evaluation. In July 2021, Plaintiff was promoted to

Executive Director of Human Resources and District Support Services, while Ahmed remained as Plaintiff's immediate supervisor.  For the 2020–2021 school year, Plaintiff received a "highly effective" rating on her evaluation, which is the highest rating an employee can receive.  As a result of Plaintiff's satisfactory evaluations, her employment contract was extended until June 30, 2024.

During the height of the COVID-19 pandemic, schools closed and began virtual learning through the end of the 2020–2021 school year.  According to Plaintiff, "[s]tressors related to fear of contagion, school closures, and virtual instruction caused many Michigan teachers to retire earlier than they would have otherwise."  (*Id.* ¶ 28, Pg ID 430.)  Due to the increase in retirements, vacant positions opened in other school districts that paid more than the Defendant School District.  As a result, several School District teachers applied and obtained employment in other school districts.  According to Plaintiff, the HFT used the ongoing teacher resignations "as leverage" to improve its members' compensation and other aspects of employment with the School District.  Plaintiff also alleges that the HFT used the ongoing resignations "as a pretext for ending the School District's ability to involuntarily transfer teachers."[1]  (*Id.* ¶ 31, Pg ID 431.)

---

[1] According to Plaintiff, in 2011, the Michigan legislature concluded that student achievement would be improved if public school employers were provided the "unrestricted right" to make involuntary transfers of teachers.  (ECF No. 21 ¶ 32, Pg ID 431.)  Under the same Michigan law, teachers unions were prohibited from

At an unspecified date, Ahmed directed Plaintiff to use the School District's right to involuntary transfers to improve the academic achievement of students by initiating the transfer of nine School District teachers during the summer before the 2021–2022 school year.  Plaintiff implemented the transfers and also implemented the voluntary resignation of  "a popular teacher" due to tenure charges by the School District's Board of Education.  The President of the HFT, Toni Coral ("Coral"), then notified the School Board Defendants that School District teachers had or planned to leave their positions with the School District "because they did not like [Plaintiff] and the way she did her job, among other things."  (ECF No. 21 ¶¶ 39, 42, Pg ID 432, 433.)  Coral also made posts on Facebook notifying members of HFT that she was in communication with the School Board Defendants on their behalf and allegedly "publicly blaming [Plaintiff]" for the resignation of teachers. (*Id.* ¶ 45, Pg ID 433–34.)  Additionally, Coral organized meetings to allegedly "coordinate the activities" of HFT members who blamed both Ahmed and Plaintiff regarding the recent resignations, and "praised HFT members for their efforts." (*Id.* ¶ 46.)

---

bargaining regarding involuntary transfers, entering any agreements regarding restricting public school employers' rights to involuntarily transfer, or filing any grievances regarding charges of involuntary transfers.  Further, Plaintiff alleges that an affiliate of the AFL-CIO opposed the school reform legislation and took "formal and informal opportunities to prevent public school employers from exercising their right to involuntarily transfer teachers."  (*Id.* ¶ 34, Pg ID 432.)

In response to the HFT's "encouragement," HFT members allegedly published false statements against Plaintiff to the general public, Board of Education, and the press.  The statements included remarks that Plaintiff was "cold, "intimidating," and "bullying," along with blaming the teacher resignations at the start of the 2021–2022 school year.  The statements were published in local and regional newspapers, state-wide media outlets, and on Facebook.

On a separate occasion, Ahmed directed Plaintiff to involuntarily transfer two additional teachers to assist with the rise in students with disabilities in Hamtramck Public Schools, which would provide students with teachers who were certified under federal and state law.  However, the School Board Defendants prevented the transfer of teachers, which Plaintiff opposed.

The School Board Defendants repeatedly directed Ahmed to terminate Plaintiff and told Ahmed that the termination was "because the HFT did not like [Plaintiff] and they did not want to lose the HFT's financial and political support." (*Id.* ¶ 42, Pg ID 428.)  Ahmed declined to terminate Plaintiff absent any evidence of wrongdoing, and instead, suggested alternatives.  In response, the School Board Defendants threatened to terminate Ahmed's employment.  On an unspecified date, the School Board Defendants entered the School District Buildings to solicit complaints from School District Staff against Plaintiff.

On October 28, 2021, the School Board Defendants placed Plaintiff on paid leave pending an investigation.[2]  At some point, the School Board Defendants notified Plaintiff that her employment agreement would not be renewed, effective June 30, 2022, because she violated School Board policies: the specific policies were not identified.  On June 27, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex, age, race, and color.  The EEOC issued a right to sue letter on July 14, 2022.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

---

[2] Plaintiff alleges that in furtherance of a conspiracy, the School Board Defendants appointed a new administrator while Ahmed was on leave, Mr. Mujahed Elhady, who "stood to gain" Plaintiff's position as a result of the investigation.

6

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678.) Moreover, the plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668.

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.

7

1989)).  A court that considers such matters must first convert the motion to dismiss to one for summary judgment.  *See* Fed. R. Civ. P 12(d).  However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ANALYSIS

In the motion, the HFT moves to dismiss the following claims alleged against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

> **Count II** - Conspiracy to Deprive Plaintiff of Civil Rights (Section 1985) (Against School District, School Board Defendants, and HFT)
>
> **Count IV** - Sex Discrimination in violation of Title VII (Against the School District, the School Board Defendants, and the HFT)
>
> **Count VI** - Violation of the ELCRA (Sex Discrimination) (Against the School District, the School Board Defendants, and the HFT)
>
> **Count VII** - Retaliation in Violation of the ADA (Against the School District, the School Board Defendants, and the HFT)
>
> **Count VIII** - Retaliation in Violation of the PWDCRA (Against the School District, the School District [sic] Defendants, and the HFT)

8

**Count XI** - Intentional Interference with Contractual Relations (Against the School Board Defendants and the HFT)

**Count XII** - Defamation and Defamation Per Se (Against the School Board Defendants and the HFT)

**Count XIII** - Invasion of Privacy - False Lights (Against the School Board Defendants and the HFT)

**Count XIV** - Conspiracy (Against the School Board Defendants and the HFT)

(ECF No. 25 at Pg ID 513–21.)  The Court addresses each claim in turn.

## Conspiracy Pursuant to 42 U.S.C. § 1985(3)  (Count II)

To survive a motion to dismiss under 42 U.S.C. § 1985(3), a plaintiff must sufficiently allege:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994); *McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *4 (6th Cir. Nov. 22, 2022).  A crucial element required to allege a § 1985(3) conspiracy claim is the existence of a class-based animus.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."); *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 835–38 (1983)

9

(reaffirming *Griffin's* interpretation of § 1985(3)); *see also Post v. Trinity Health-Mich.*, 44 F.4th 572, 580 (6th Cir. 2022) ("We have held that § 1985(3) reaches ***only*** conspiracies targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework.") (emphasis added).

Plaintiff alleges that HFT conspired with the School Board Defendants and the School District to deprive her of her property interest in the employment contract in violation of 42 U.S.C. § 1985(3).  However, Plaintiff's Amended Complaint has a fatal flaw for purposes of alleging a § 1985(3) claim: it is devoid of sufficient evidence or facts demonstrating class-based animus by the HFT or any named Defendants.  Not only does Plaintiff not allege any facts on the face of the Amended Complaint that could plausibly demonstrate some level of class-based animus towards Plaintiff, but she fails to even provide a single exhibit (i.e., the EEOC charge) to support her civil rights conspiracy claim.  As such, Plaintiff's conspiracy claim under §1985(3) must be dismissed.

**<u>Sex Discrimination Under Title VII and the ELCRA (Counts IV and VI)</u>**

Generally, the Sixth Circuit analyzes discrimination claims brought under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") under the same standards as discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").  *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).  Title VII provides

10

that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a); *see also* Mich. Comp. Laws § 37.2202(1)(a) ("[a]n employer shall not ... [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment compensation, or a term, condition or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status."). Title VII also prohibits labor organizations from "caus[ing] or attempt[ing] to cause an employer to discriminate against an individual" based on sex. *Id.* § 2000e–2(c)(3).

Plaintiff maintains that she experienced discrimination based on sex when the new male administrator terminated Plaintiff from her employment with the School District. However, this claim fails for two reasons. First, Plaintiff provides insufficient facts that her termination was based on sex, seemingly relying on the fact that (1) the new administrator that terminated Plaintiff, Elhady, is a male and Plaintiff is female and Elhady's investigative report—which led to Plaintiff's termination—alleged that she violated policies "by engaging in direct and forceful behaviors that were and would have been tolerated from male, not female [sic]," ECF No. 28 at Pg ID 837, and (2) Mr. Thomas Niczay, who was a male superintendent before Ms. Ahmed, involuntarily transferred teachers and was not terminated, but instead was recently rehired. The mere fact that parties are of the

opposite sex and a termination occurred does not give rise to a claim for sex discrimination without any sufficient underlying facts to the contrary.  *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1739 (2020) (to allege sex discrimination under Title VII, a plaintiff must at least plead facts to show "that a protected trait like sex was a "motivating factor" in a defendant's challenged employment practice.").

Plaintiff briefly alleges in her Response that she may be a victim of gender stereotyping, *see* ECF No. 28 at Pg ID 837, but fails to allege sufficient facts to support this claim.  Although courts allow for claims of gender stereotyping to be protected under civil rights laws, at a minimum, a plaintiff is required to sufficiently pled that "the employer actually relied on [their] gender in making its decision."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251–52 (1989) (noting that "remarks [related to gender stereotyping coupled with other facts] can certainly be *evidence* that gender played a part") (emphasis in original).  In *Rouch World, LLC v. Dep't of C.R.*, 987 N.W.2d 501, 505 (Mich. 2022), the Michigan Supreme Court acknowledges that "[w]here the discriminator tolerates certain characteristics in one sex but not the other, discrimination on the basis of sex has occurred."  *Id.* at 514 (citing *Bostock*, 140 S. Ct. at 1737).  There, the court concluded that the defendant's blatant denial of a same-sex couple's ability to use its facility for the couple's wedding because it would "violate their sincerely held religious belief that

marriage is a sacred act of worship between one man and one woman," was a clear violation of the ELCRA. *Id.* at 505. Again, however, similar to every sex discrimination case, the complaint must state sufficient facts to allege that the gender stereotyping was a motivating factor, not just vague allegations that it may have possibly occurred. *See Iqbal*, 556 U.S. at 678. Thus, on the face of the Amended Complaint, Plaintiff failed to plead sufficient facts to allege that her gender was a 'motivating factor' for her termination.

Next, Plaintiff does not allege that she was ever employed by or maintained an agency relationship with HFT, nor does Plaintiff provide sufficient facts to allege that HFT's alleged concerted effort to discriminate against Plaintiff was based on her sex. As such, Plaintiff's Title VII and ELCRA claims must be dismissed.

### Retaliation Pursuant to the ADA and the PWDCRA (Counts VII and VIII)

The Michigan Persons with Disabilities Civil Rights Act, Mich. Comp Laws § 37.1101 *et seq.* ("PWDCRA") "substantially mirrors the [Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*] ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (citation omitted). The ADA prohibits discrimination against a qualified individual "on the basis of disability" in employment decisions. 42 U.S.C. § 12112(a). Further,

13

under the retaliation provision, it is unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015) (quoting 42 U.S.C. § 12203(a)).

To bring a prima facie case of retaliation under the ADA and PWDCRA, a plaintiff must demonstrate the following: "(1) he [or she] engaged in activity protected by the [ADA]; (2) the defendant knew of this exercise of plaintiff's protected rights; (3) the defendant subsequently took an employment action adverse to plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was causal connection between the protected activity and the adverse employment action." *Hurtt*, 627 F. App'x at 422 (quoting *Steward v. New Chrysler*, 415 F. App'x 632, 643–44 (6th Cir.2011)); *Parker v. Daimlerchrysler Corp.*, No. 245066, 2004 WL 1103968, at *3 (Mich. Ct. App. May 18, 2004)) (listing elements of the prima facie case for retaliation under the PWDCRA).

Here, Plaintiff alleges that the HFT, along with the School District and School Board Defendants, retaliated against her "for opposing an act that is unlawful under the ADA [and the PWDCRA]," which led to Plaintiff being

14

"placed on an administrative leave, pending investigation, and, ultimately, fired two years before her employment contract expired."  (ECF No. 21 ¶¶ 107, 117; Pg ID 446, 448; ECF No. 28 at Pg ID 838.).  Although the Court finds that Plaintiff has likely satisfied the pleading requirements for a retaliation claim under the ADA and Michigan PWDCRA against the School District and School Board Defendants, her claim fails as alleged against the HFT.  Again, Plaintiff does not allege that she was an employee or a member of the HFT, and as the HFT notes, "[t]he decision to retain or not renew her contract was solely that of the Hamtramck Board of Education; the Union plays no role in that process."  The Court agrees and finds that Plaintiff failed to allege a retaliation claim against HFT: these claims must also be dismissed as to HFT only.

### **Intentional Interference with Contractual Relations (Count XI)**

Parties do not appear to dispute that Michigan law governs the underlying state law claims, and as such, the Court will apply Michigan law to the remaining claims.  (ECF Nos. 25, 28, 31.)  Under Michigan law, "tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy."  *Relative Time Films, LLC v. Covenant House Michigan*, No. 359645, 2022 WL 16858810, at *3 (Mich. Ct. App. Nov. 10, 2022) (quoting *Health Call of Detroit v. Atrium Home & Health Care Servs, Inc.*, 706 N.W.2d 843, 848 (Mich. Ct. App. 2005)).  A tortious

15

interference with a contract claim has three elements that a plaintiff must prove: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Id.* Regarding the third element, "[o]ne who alleges tortious interference with a contractual . . . relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian v. Genesys Health Care Sys*, 689 N.W.2d 145, 157–58 (Mich. Ct. App. 2004) (quotation marks and citation omitted). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Knight Enters. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (quotation marks and citation omitted). If a plaintiff fails to demonstrate a defendant's conduct was wrongful per se, "the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.* (quotation marks and citation omitted).

First, it is clear that Plaintiff had an employment contract with the School District, *see* ECF No. 26-2, and neither party argues its validity. Next, Plaintiff sufficiently alleges that a breach occurred when she was terminated by the School District prior to her contract extension date through June 30, 2024. Finally, Plaintiff must allege sufficient facts to show that the HFT plausibly engaged in an "unjustified instigation" of a breach of Plaintiff's employment contract. *See*

16

*Relative Time Films, LLC*, 2022 WL 16858810, at *3.  According to Plaintiff, HFT

interfered with her employment "as part of its effort to stop the School District

from involuntarily transferring HFT members."  (ECF No. 28 at Pg ID 839.)

Although Plaintiff does not clearly state exactly how HFT interfered, she directs

the Court to numerous sections in the Amended Complaint. (*See* EFC No. 21 ¶

146, Pg ID 454.)  These sections discuss the following events as related to specific

actions by the HFT:

(1) the HFT using the fact that teachers were resigning "as leverage" to improve
teacher compensation and "as pretext" for ending involuntary transfers, *id.*
¶¶ 30–31, Pg ID 431;

(2) the HFT's President notifying the School Board Defendants that teachers
did not like how plaintiff did her job, making social posts to HFT members
discussing their advocacy efforts, *id.* ¶¶ 38–39, Pg ID 432;

(3) the HFT and the School Board Defendants, who both sought to "maintain
the HFT's political and financial support, conspired and agreed, explicitly or
implicitly, to force Mrs. Ahmed to terminate [Plaintiff's] employment,
among other things[,]" *id.* ¶ 40, Pg ID 433;

(4) the HFT "encouraged its members to put pressure on the School Board
Defendants and Mrs. Ahmed to fire [Plaintiff] by publicly blaming
[Plaintiff] for the fact that School District teachers were resigning from the
School District[,]" *id.* ¶ 45, Pg ID 433–34.

Under the *Iqbal* and *Twombly* pleading standard, and for purposes of a

12(b)(6) motion, the Court finds that these allegations are sufficiently pled to

allege an intentional interference claim and the requisite malice, if proven.

## <u>Defamation and Defamation Per Se (Count XII)</u>

In Michigan, the elements of a defamation claim are as follows:

> "(1) a false and defamatory statement concerning the
> plaintiff, (2) an unprivileged communication to a third
> party, (3) fault amounting at least to negligence on the part
> of the publisher, and (4) either actionability of the
> statement irrespective of special harm (defamation per se)
> or the existence of special harm caused by publication."

*Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010);

*Cetera v. Mileto*, No. 356868, 2022 WL 3006778, at *3 (Mich. Ct. App. July 28,

2022).  "[Mich. Comp. Laws] 600.2911(1) is the codification of the common-law

principle that words imputing a lack of chastity or the commission of a crime

constitute defamation per se and are actionable even in the absence of an ability to

prove actual or special damages ...."  *Cetera*, 2022 WL 3006778, at *3 (quoting

*Burden v. Elias Bros. Big Boy Rests.*, 613 N.W.2d 378, 382 (Mich. Ct. App. 2000)

(emphasis added).  A "plaintiff claiming defamation must plead a defamation

claim with specificity by identifying the exact language that the plaintiff alleges to

be defamatory."  *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir.

2020) (quoting *Ghanam v. Does*, 845 N.W.2d 128, 142 (Mich. Ct. App. 2014).

Moreover, the elements themselves "must be specifically pleaded, including the

allegations with respect to the defamatory words, the connection between the

plaintiff and the defamatory words, and the publication of the alleged defamatory

words."  *Id.* (citing *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297,

18

299 (Mich. Ct. App. 1991) (per curiam).  "[A] defamation plaintiff must plead with

specificity who published the defamatory statement, when it was published, and,

most importantly, a plaintiff must identify the precise materially false statement

published."  *Id.* (citing *Rouch v. Enquirer & News of Battle Creek Mich.*, 487

N.W.2d 205, 220 (Mich. 1992).

In support of Plaintiff's defamation claim, Plaintiff alleges the following:

> 46.  HFT members responded to the HFT's encouragement
> by, among other things, publishing objectively false
> statements against Mrs. lmbrunone to the general public,
> to the Board of Education, and to the press; including, but
> not limited to, she was performing her job incompetently,
> she was "cold," "intimidating," and "bullying," and, that
> she was responsible for all of the teacher resignations that
> occurred at the beginning of the 2021-2022 school year.
>
> 47.  The statements referenced in paragraph 46 were made
> by HFT President, Mrs. Toni Coral, and current or former
> HFT members Ms. Michelle Cook, Ms. Therese Comer,
> Ms. Brooke Horzelski-Jones, Mr. Mathew Rautio, Ms.
> Jamie Jankowski, Mr. Maxwell Spayde, Ms. Jennifer
> Maloney, Ms. Jody Gordon, Ms. Ashley Hofer Wentzloff,
> Ms. Marta Hall, Ms. Sandra Codispoti, Ms. Christine
> Zablocki, Ms. Susan Knapp, Ms. Jessica Schippert, Ms.
> Allison Morici, Ms. Angela Knight, Ms. Michelle Scott,
> Mr. Timothy Maher, and Ms. Sarah Filipiak.

(ECF No. 21 ¶¶ 46–47, Pg ID 433–34.)  HFT maintains that this claim fails

because it "relies on a summary, not a quotation, of remarks made by unknown

persons at unknown times to an unknown audience."  (ECF No. 25 at Pg ID 517.)

The Court agrees.  Although Plaintiff does in fact quote the alleged defamatory

statements, she does not adequately attribute them to the specific authors outside of providing a general list of the HFT members' names in the subsequent paragraph. (*See* ECF No. 21 ¶ 47, Pg ID 434.)  On the face of the Amended Complaint, Plaintiff fails to allege—with the required specificity under Sixth Circuit and Michigan law— "who" published which statement or "when [they] was published."  *See Ryniewicz*, 803 F. App'x at 867; *Rouch*, 487 N.W.2d at 220. Relying on a generalized summary of statements from a list of individuals is insufficient to survive a 12(b)(6) motion to dismiss on a claim of defamation.

Further, Plaintiff fails to allege a claim for defamation per se as Plaintiff does not state that HFT made any accusations or statements regarding Plaintiff being engaged in criminal activity or her chastity.  *See Cetera*, 2022 WL 3006778, at *4 (discussing Mich. Comp. Laws § 600.2911(1)) ("The Legislature plainly and unambiguously intended that actions for "defamation per se" be limited to those in which the false and defamatory statements regard criminality and lack of chastity.").  As such, Plaintiff's claim for defamation per se also fails to be sufficiently pled.

### False-Light Invasion of Privacy (Count XIII)

Under Michigan law, there are four categories of invasion of privacy claims: "(1) intrusion upon the plaintiff's seclusion or solitude or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity

that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 448 (Mich. Ct. App. 2018) (quoting *Doe v. Mills*, 536 N.W.2d 824, 828 (Mich. Ct. App. 1995). In order to bring a claim for false-light invasion of privacy, a plaintiff must allege "the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Found. for Behav. Res. v. W. E. Upjohn Unemployment Tr. Corp.*, 957 N.W.2d 352, 355 (Mich. Ct. App. 2020) (quoting *Puetz*, 919 N.W.2d at 448). Moreover, a defendant who disseminates the information must have done so with malice. *See id.* at 357 ("malice is an element of false-light invasion of privacy, regardless of whether the plaintiff is a public or private figure.").

HFT maintains that Plaintiff's right to privacy was not disturbed because she was a public employee, and her terms of employment and salary were made available to the public. HFT fails to cite to any statutes or caselaw that supports its argument. However, similar to Plaintiff's defamation claim, she fails to sufficiently allege which statements were actually published by HFT (not the members of the HFT) that placed Plaintiff in a false light. As such, Plaintiff's claim for false-light invasion of privacy must be dismissed.

### Civil Conspiracy (Count XIV) [3]

"A civil conspiracy is an agreement between two or more persons to injure

another by unlawful action." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir.

2016) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  To prevail

on a civil conspiracy claim, a plaintiff must show "that there was a single plan, that

the alleged coconspirator shared in the general conspiratorial objective, and that an

overt act was committed in furtherance of the conspiracy." *Id.* (quoting *Heyne v.*

*Metro. Nashville Pub. Schs.*, 655 F.3d 556, 563 (6th Cir. 2011)).  Courts may infer

the existence of an agreement by "circumstances, acts and conduct of the parties."

*Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich.

---

[3] Although Plaintiff's pleadings do not specifically identify whether she is bringing this claim under § 1983 or as an individual tort, the Court understands that Plaintiff is making two separate claims under both.  First, Plaintiff's civil conspiracy claim identifies the violation of "constitutional rights" as her alleged injury, ECF No. 21 ¶ 170, Pg ID 458—a claim that is sound under §1983.  *See, e.g., Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).  On the other hand, Plaintiff's civil conspiracy claim also identifies "statutory and common law" violations as her alleged injury, *see id.*, which is sound in state tort law, and must be pled accordingly.  *See Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, No. 2:12-cv-14405, 2013 WL 3773373, at *5 (E.D. Mich. July 17, 2013) (citing *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003), *aff'd*, 693 N.W.2d 358 (Mich. 2005)) ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort.") (punctuation modified, citation omitted).  Because the Court finds that Plaintiff's tort allegation for intentional interference with a contractual relationship (Count XI) is the only actionable claim left against HFT, the Court will analyze this section as Plaintiff's civil conspiracy claim being pled under an underlying tort.

2011) (quoting *Temborius v. Slatkin*, 403 N.W.2d 821, 828 (Mich. Ct. App. 1986)); *Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021).

Regarding the Plaintiff's claim of a civil conspiracy, Plaintiff sufficiently alleges that a single plan existed: the HFT and School Board Defendants agreed to force Ahmed to terminate Plaintiff's employment. Plaintiff also sufficiently pled a shared conspiratorial objective: both the HFT and School Board Defendants sought to terminate Plaintiff to "maintain the HFT's political and financial support," which was also conveyed to Ahmed. (ECF No. 21 ¶¶ 40, 42, Pg ID 433.) Finally, the overt action that Plaintiff pled is the termination of her employment contract before it was set to expire in June 2024. Thus, Plaintiff's civil conspiracy claim may proceed in light of Plaintiff's claim of intentional interference with a contractual relationship.

## CONCLUSION

In short, the Court concludes that Plaintiff's Amended Complaint failed to allege sufficient facts for her claims of a conspiracy to violate Plaintiff's rights under § 1985 (Count II), sex discrimination pursuant to Title VII and the Michigan ELCRA (Counts IV and VI), retaliation under the ADA and PWDCRA (Counts VII and VIII), defamation and defamation per se (Count XII), and false-light

invasion of privacy (Count XIII).  As such, Counts II, IV, VI, VII, and VIII must be dismissed pursuant to Rule 12(b)(6).

Accordingly,

**IT IS ORDERED**, that "Defendant, Hamtramck Federation of Teachers' Motion to Dismiss Per Fed R. Civ. P. 12(b)(6)" (ECF No. 25) is **GRANTED IN PART** as to Counts II, IV, VI, VII, and VIII, and **DENIED IN PART** as to Counts XI and XIV.

**IT IS FURTHER ORDERED**, that Counts II, IV, VI, VII, and VIII are **DISMISSED**.  Counts XI and XIV may proceed with litigation.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 24, 2023