UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE IMBRUNONE,

     Plaintiff,

                                  Civil Case No. 22-12346

v.                                 Honorable Linda V. Parker

SCHOOL DISTRICT OF
THE CITY OF HAMTRAMCK, *et al.*,

     Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT (ECF NO. 26)

Michelle Imbrunone ("Plaintiff") initiated this civil rights lawsuit on October 3, 2022, due to her termination of employment against the following Defendants: School District of the City of Hamtramck; members of the Board of Education of the School District of the City of Hamtramck, Evan Major, Salah Hadwan, Moortadha Obaid, Showcat Chowdhury, and Regan Watson (collectively, "Defendants"); and the Hamtramck Federation of Teachers, AFL-CIO.  In an Amended Complaint, Plaintiff alleges the following claims:

- **Count I** - violation of the Due Process Clause of the Fourteenth Amendment
- **Count II** - conspiracy to deprive Plaintiff of her civil rights pursuant to 42 U.S.C. § 1985;
- **Count III** - violation of Michigan's Due Process Clause pursuant to Mich. Const. 1963, Art. I, § 17;

- **Count IV** - sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VII")
- **Count V** - sex discrimination in violation of Title IX of the Education Amendments of 1972 ("Title IX")
- **Count VI** - sex discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act of 1976, Mich. Comp. Laws. § 37.2101 *et seq.* ("ELCRA")
- **Count VII** - retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA");
- **Count VIII** – retaliation in violation of Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq.* ("PWDCRA");
- **Count IX –** breach of contract;
- **Count X –** violation of section 1299 of Michigan's Revised School Code, Mich. Comp. Laws § 380.1229;
- **Count XI –** intentional interference with contractual relations;
- **Count XII –** defamation and defamation per se;
- **Count XIII –** false-light invasion of privacy; and
- **Count XIV -** civil conspiracy.

(ECF No. 21.)

Asserting that Plaintiff's claims are subject to arbitration pursuant to the terms of her employment contract, Defendants seek to have the Court compel Plaintiff to arbitrate those claims and dismiss this lawsuit.  Thus, the matter is presently before the Court on "Defendants' Motion to Dismiss, or Alternatively for Summary Judgment, and to Compel Arbitration."  (ECF No. 26.)  The motion is fully briefed.  (ECF Nos. 29, 32.)  Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting in part and denying in part Defendants' motion.

2

# I. Factual Background[1]

In January 2020, Plaintiff was hired by the School District to serve as its Director of Human Resources.  Upon Plaintiff's hiring, she signed an employment contract, which included the following arbitration provision:

> In the event of a dispute between the parties relating to any provision of this Agreement, or a dispute concerning any of the parties' rights or obligations as defined under this Agreement, a claim of wrongful discharge, a statutory civil rights claim, or a claim under any statute, the parties hereby agree to waive their rights to litigate any such dispute in a judicial forum and agree to submit such dispute to binding arbitration. The parties hereby waive their right to jury trial. The parties shall mutually agree upon a neutral arbitrator, or in the event that they are unable to do so, shall select an arbitrator through the auspices of the Federal Mediation and Conciliation Service. The arbitrator's fee and the expense of the arbitration shall be shared equally by the parties. All parties are entitled to have representation of their own designation; however, each party shall be responsible for the costs of such respective representation.
>
> If Employee submits a statutory civil rights claim or other statutory claim, the arbitrator will apply the applicable substantive law and Employee will be entitled to all rights and remedies under the statute. The parties will have the right to conduct reasonable discovery and the arbitrator will have the authority to issue subpoenas for the attendance of witnesses or production of documents or things. The arbitrator must issue a written opinion, which includes findings of fact and conclusions of law.

(Ex. 1, Arbitration Agreement, ECF No. 26-2 at Pg ID 717–18.)  Plaintiff signed the agreement on January 6, 2020.  (*Id.* at Pg ID 718.)

---

[1] This is an abbreviated set of facts.  The Court incorporates by reference the complete set of facts from its recent order. (ECF No.33)

For the 2019–2020 school year, Plaintiff received an "effective" rating on her evaluation. In July 2021, Plaintiff was promoted to Executive Director of Human Resources and District Support Services, while Mrs. Jaleelah Ahmed ("Ahmed")—the Superintendent of Schools—remained as Plaintiff's immediate supervisor. For the 2020–2021 school year, Plaintiff received a "highly effective" rating on her evaluation, which is the highest rating an employee can receive. As a result of Plaintiff's satisfactory evaluations, her employment contract was extended until June 30, 2024.

On October 28, 2021, Defendants placed Plaintiff on paid leave pending an investigation. At some point, Defendants notified Plaintiff that her employment agreement would not be renewed, effective June 30, 2022, because she violated School Board policies: the specific policies were not identified. On June 27, 2022, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex, age, race, and color. The EEOC issued a right to sue letter on July 14, 2022.

## II.   Applicable Law and Analysis

The alleged arbitration agreement falls within the scope of the Federal Arbitration Act ("FAA"). *See McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)). The FAA provides that:

> [a] written provision in any . . . contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal
> to perform the whole or any part thereof, or an agreement in
> writing to submit to arbitration an existing controversy arising out
> of such a contract, transaction, or refusal, shall be valid,
> irrevocable, and enforceable.

9 U.S.C. § 2.  "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  Because "[t]he FAA…places arbitration agreements on an equal footing with other contracts, [*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006),] . . . they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

When considering a motion to compel arbitration under the FAA, the court has four tasks: (1) to determine whether the parties agreed to arbitrate; (2) to determine the scope of any agreement to arbitrate; (3) if federal statutory claims are asserted, decide whether Congress intended those claims to be nonarbitrable; and (4) if some of the claims fall outside the scope of the arbitration agreement, decide whether to stay the remaining proceedings pending arbitration.  *See Stout v.*

*J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Upon concluding that the plaintiff's claims are subject to arbitration, a district court may dismiss the action or, if requested by a party, stay the action.  *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518–19 (6th Cir. 2017); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990)).

## A. Validity of the Agreement

In deciding whether parties agreed to arbitrate, the Court must first determine whether the agreement is valid by applying "ordinary state-law principles that govern the formation of contracts." *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020).  Here, the parties each cite Michigan law in their briefs. Thus, it does not appear that the parties dispute that Michigan law governs.  Michigan law requires an offer and acceptance to form a contract.  *See Hegenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Pakideh v. Franklin Com. Mortg. Grp., Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995)); *see also Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992) ("A contract is made when both parties have executed or accepted it, and not before.").  What constitutes an offer or acceptance under Michigan law was summarized by the Sixth Circuit in *Hegenreder*:

6

> "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian v. Domino's Pizza LLC*, 273 Mich. App. 449, 733 N.W.2d 766, 770 (2006) (internal quotations marks omitted). Similarly, "an acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id*. at 771 (quotation marks omitted; alteration removed).

656 F.3d at 417.

"Whether the parties have mutually agreed to be bound [by contract] 'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.' " *Id*. (quoting *Kloian*, 733 N.W.2d at 771)  Here, the Court finds that there was an offer and acceptance as evidenced by Defendants' extension of employment to Plaintiff, and by signing the document and beginning her term of employment, Plaintiff's actions satisfied the requisite acceptance.

### 1. *Waiver of Judicial Forum*

Although the Parties do not dispute that there was offer and acceptance for Plaintiff to enter into the contract, Plaintiff's main argument against the validity of the agreement is that she did not "knowingly and voluntarily waive her right to judicial forum because . . . the arbitration clause did not adequately articulate the

procedure for arbitration." [2]  (ECF No. 29 at Pg ID 851.)  To determine whether a waiver of judicial forum in an employment agreement is knowing and voluntary, the Sixth Circuit assesses the following factors: " '(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.' "  *Alonso v. Huron Valley Ambulance Inc.*, 375 F. App'x 487, 492 (6th Cir. 2010) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003)).  Courts in this Circuit differ on how much weight to ascribe each factor:

> A knowing and voluntary waiver has been found where the person signing it was educated, had three days to determine whether to sign it, was advised that she might want to contact an attorney, and gave no indication that she did not understand the waiver. *Morrison*, 317 F.3d at 668. Similarly, a knowing and intelligent waiver has been found where the person executing it was a managerial employee capable of understanding the waiver and had two months to consider it, and where the waiver clearly indicated that she was waiving her right to sue in federal court. *Seawright v. Am. Gen. Fin. Servs.*, 507 F.3d 967, 974 (6th Cir.2008). Finally, a knowing and intelligent waiver was found where the person executing it did not request extra time to consider it or contact a lawyer and did not indicate that he did not understand the waiver. *Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740, 749 (W.D. Mich.

---

[2] Rather than re-filing the original response to Defendants' original motion to compel arbitration, ECF No. 23, Plaintiff references the original response and Defendant's original motion, ECF No. 19, in response to Defendants' renewed motion. (ECF No. 26.)  Because the arguments have not changed, the Court will reference both former pleadings here.

2008). In each of those cases, the employee was given some documentation regarding what type of process he or she would receive in place of a judicial proceeding. *See Morrison*, 317 F.3d at 654 (finding valid waiver where employee was informed "that all arbitrations would occur before a neutral arbitrator, ... that all such arbitrations would be final and binding ..., and that all arbitrations were to proceed according to the 'Circuit City Dispute Resolution Rules and Procedures' "); *Seawright*, 507 F.3d at 970 (finding valid waiver where employer sent all employees a letter and a copy of the new dispute resolution procedures and conducting informational meetings to explain the process); *Moore*, 533 F.Supp.2d at 743 (finding valid waiver where arbitration agreement provided detailed explanation of arbitration procedures).

*Alonso*, 375 F. App'x at 492.

Here, Plaintiff relies on the Circuit Court's analysis in *Alonzo* and argues that the School district failed to "publish[] detailed arbitration procedures," which Plaintiff did not have an opportunity to view upon request." (ECF No. 29 at Pg ID 852.) In concluding that the plaintiffs in *Alonzo* did not knowingly and voluntarily waive their rights to a judicial forum, the court noted that the plaintiffs "were educated and gave no indication that they did not understand the waivers they were signing, and they successfully used the grievance process on multiple occasions prior to contending that they did not knowingly and intelligently waive their right to a judicial forum." *Alonso*, 375 F. App'x at 493. The *Alonzo* court continues, however, that the waiver itself "did not include ***any information*** regarding the Grievance Review Board or the procedures that would be used in place of a

9

judicial proceeding,"[3] nor were the plaintiffs provided "***any further information***

regarding the Grievance Review Board until they received an Employee Handbook

at Orientation, nearly a month after they were hired." *Id.* at 493–94 (emphasis

added).

This Court finds *Alonzo* distinguishable from the present case.  First, the

*Alonzo* court was correct in that the waiver did not provide  "any information" on

the process.  *Id.* at 493.  However, the arbitration clause in this case provided, in

relevant part, the following:

> The parties hereby waive their right to jury trial. ***The parties shall
> mutually agree upon a neutral arbitrator, or in the event that
> they are unable to do so, shall select an arbitrator through the
> auspices of the Federal Mediation and Conciliation Service***. ***The
> arbitrator's fee and the expense of the arbitration shall be shared
> equally by the parties.*** All parties are entitled to have
> representation of their own designation; however, each party shall
> be responsible for the costs of such respective representation.

---

[3] The waiver in *Alonzo* states as follows:

> Any dispute arising out of or in connection with any aspect of my
> employment by the Company, or termination thereof, including by
> way of example but not limitation, disputes concerning alleged
> civil rights violations, breach of contract or tort, shall be
> exclusively subject to review by the Grievance Review Board.
> Any decision of the Review Board shall be binding to both parties,
> and enforceable in the circuit court.

*Alonso*, 375 F. App'x at 493.

(ECF No. 26-2 at Pg ID 717 (emphasis added).)  Although the waiver does not

provide line-by-line instructions on the scope and nature of arbitration (which will

likely vary depending on the arbitrator), it reasonably notifies a potential employee

about the "type" of process that would occur in lieu of a judicial forum.  *See*

*Morrison*, 317 F.3d at 654 (finding valid waiver where the language informed the

employee "that all arbitrations would occur before a neutral arbitrator, ... that all

such arbitrations would be final and binding ..., and that all arbitrations were to

proceed according to the 'Circuit City Dispute Resolution Rules and Procedures.").

Further, most analogous to *Seawright*,—where the court upheld a waiver where the

plaintiff was a "managerial employee" who was capable of understanding the

waiver—Plaintiff was hired as the Director of Human Resources, which clearly

demonstrates her reasonable familiarity with employment agreements, waivers, etc.

*See e.g., Seawright*, 507 F.3d at 974.  Finally, the language in the waiver was clear

and placed Plaintiff on notice that she was waiving her right to a jury trial, and

someone with experience in human resources would reasonably understand what

the waiver entailed.  *See id. But c.f. Brody v. CultureSource*, No. 20-11663, 2020

WL 6562089, at *4 (E.D. Mich. Nov. 9, 2020) (finding waiver invalid where the

"arbitration clause in [the plaintiff's] employment application [did] not clearly

preclude bringing a claim in court").  The Court finds that the waiver was

sufficient, and that Plaintiff knowingly and voluntarily signed away her right to a judicial forum.

   2.  *Uncertainty of Arbitrator*

   Next, Plaintiff briefly argues that the arbitration agreement lacks information as to "how an arbitrator might handle her common law claims[,]" alleging that under the language of the agreement, "an arbitrator would be free to ignore substantive law, restrict [Plaintiff's] remedies, and not permit any access to discovery or witnesses."  (ECF No. 29 at Pg ID 854.)  Plaintiff's reading of the clause is mistaken.  On the face of the agreement, it provides that "[t]he parties will have the right to conduct reasonable discovery and the arbitrator will have the authority to issue subpoenas for the attendance of witnesses or production of documents or things."  (ECF No. 26-2 at Pg ID 718.)  Regarding the hesitation about "how" the arbitrator will handle Plaintiff's common law claims, the arbitrator is required under the agreement to issue a written opinion, which includes findings of fact and conclusions of law.  *Id.*  Although the FAA "presumes that arbitration awards will be confirmed[,]" *see Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (citing 9 U.S.C. § 9 (1994)), if Plaintiff believes that there was such an error as a misapplication of law, courts "may vacate an award where the arbitrators have manifestly disregarded the law."  *Id.* (citation omitted).  Further, the agreement provides that a  Plaintiff must "mutually agree"

12

on a neutral arbitrator or select from an arbitration service, thus allowing Plaintiff

to research the potential arbitrator and make an informed decision.

Because there was a valid waiver of Plaintiff's right to a judicial forum and

the arbitration agreement protects against a rogue arbitrator, the Court finds that

the arbitration agreement is valid.

## B. Scope of the Arbitration Agreement

Next, the Court must determine the scope of the arbitration agreement.

"Absent some ambiguity in the agreement, . . . it is the language of the contract

that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle

House, Inc.*, 534 U.S. 279, 289 (2002).  Courts must resolve "any doubts

concerning the scope of arbitral issues ... in favor of arbitration."  *In re: Auto.

Parts Antitrust Litig.*, 951 F.3d at 381 (quoting *Granite Rock Co. v. Int'l Bhd. of

Teamsters*, 561 U.S. 287, 298, (2010)).  Under the agreement at issue, arbitration is

mandatory in the event that a "dispute [arises] between the parties relating to any

provision of [the] Agreement, or a dispute concerning any of the parties' rights or

obligations as defined under [the] Agreement, a claim of wrongful discharge, a

statutory civil rights claim, or a claim under any statute . . . ."  (Ex. 1, Arbitration

Agreement, ECF No. 26-2 at Pg ID 717.)  The parties concede that the scope of the

agreement includes statutory and civil rights claims.  (ECF No. 26 ¶ 5, Pg ID 682;

ECF No. 29 at Pg ID 854.) However, the parties dispute whether the common law claims are within the scope of the arbitration clause.

The Court finds that outside of the civil rights and statutory claims, only the breach of contract claim would fall within the scope of the arbitration agreement. The breach of contract claim is directly addressing Plaintiff's termination under the initial employment term provision within the agreement, *see* ECF No. 26-2 § 1, Pg ID 715, which is contemplated under the arbitration clause as a "dispute between the parties relating to any provision of this Agreement." (*Id.* at Pg 717.) However, the remaining claims—intentional interference with contractual relations, defamation and defamation per se, false-light invasion of privacy; and civil conspiracy— fall outside of the arbitration agreement.

## C. Whether the Claims are Arbitrable

Next, the Court must determine if any of the statutory claims were not intended to be included in arbitration. "It is well-settled that employment-related statutory claims, such as Title VII claims, may validly be subject to an arbitration agreement enforceable under the FAA." *Williams v. FCA US LLC*, No. 17-10097, 2018 WL 2364068, at *4 (E.D. Mich. May 24, 2018) (citing *Willis v. Dean Witter Reynolds*, *Inc.*, 948 F.2d 305 (6th Cir. 1991)); *see also Morrison*, 317 F.3d at 658 (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28 (1991)) ("The Supreme Court has made clear that statutory rights, such as those created by Title

14

VII, may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights."); *Rembert v. Ryan's Fam. Steak Houses, Inc.*, 596 N.W.2d 208, 211 (Mich. 1999) ("employers are free to require arbitration of claims as a condition of employment"). Thus, no claims within the scope of the agreement are precluded here.

## D. Fee-Splitting Provision

Plaintiff maintains that provided the Court grants the motion to compel arbitration, it should strike the fee-splitting provision. When determining whether a cost-splitting provision in an arbitration agreement is enforceable, the Sixth Circuit adopted a "case-by-case standard." *Morrison*, 317 F.3d at 653; *see also Green Tree Financial Corp.-Ala. v. Randolph,* 531 U.S. 79 (2000). Under this approach, courts must assess whether the cost-splitting provision "effectively prevents the vindication of a plaintiff's statutory rights" such that "those rights cannot be subject to mandatory arbitration under that agreement." *Id.* at 658. This inquiry proceeds as follows: "(1) the potential litigant's ability to pay arbitration costs and fees; (2) the difference between the expected cost of arbitration to the litigant and the expected cost of a judicial forum; and (3) whether that difference "is so substantial as to deter the bringing of claims" in the arbitral forum. *Id.* at 660 (summarizing *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)). Regarding the potential litigant's ability to pay, this

15

inquiry is neither " 'a searching inquiry into an employee's bills and expenses[ ]' " nor a " 'detailed analyses of the household budgets of low-level employees to conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora.' " *Id.* at 663–64 (citation omitted).  Regarding the costs of arbitration, "the reviewing court should look to average or typical arbitration costs" as potential litigants likely weigh those costs when deciding whether to submit their claims to arbitration.  *Id.* at 664.  Courts must then compare those costs to the costs of litigation and weigh them "in a realistic manner" (considering that most plaintiffs bringing discrimination claims are represented by counsel on a contingency-fee basis and thus are faced with minimal costs in the judicial forum).  *Id*.  Most importantly, the focus of the inquiry centers around "whether the terms of the arbitration agreement itself would deter a substantial number of similarly situated employees from bringing their claims in the arbitral forum."  *Id*. at 664–65.

Plaintiff solely relies on the analysis of the facts in *Morrison* to argue that the fee splitting provision in the current litigation should be rendered unenforceable.  In *Morrison*, the court concluded that the cost-splitting provision was unenforceable as it would deter other employees similarly situated as the plaintiff from seeking to vindicate their statutory claims.  *Id.* at 669.  In its analysis, the court focused on the fact that although the plaintiff was a manager at a retail

16

store, she was recently terminated from her position, forcing her to continue to pay bills and other life necessities. *Id.* (noting that "[u]nless she is exceedingly fortunate, the potential litigant will experience at least a brief period of unemployment."). The court next shifts to the fact that the agreement requires that she pay half of the required arbitration, which in some cases can "easily reach thousands, if not tens of thousands, of dollars far exceeding the costs that a plaintiff would incur in court." *Id.* According to a study by the American Arbitration Association cited by the plaintiff in *Morrison*, "the average arbitrator fee was $700 per day and [] an average employment case incurred a total of $3,750 to $14,000 in arbitration expenses." *Id.* (alterations to original). The court thus concluded that based on the costs associated with arbitration, "along with the ***evidence that [the plaintiff] presented regarding her previous salary***," the cost-splitting provision would deter "a substantial percentage of litigants from bring their claims in the arbitral forum." *Id.*

Here, however, Plaintiff does not attempt to argue that she would have an inability to pay her portion of the costs associated with arbitration.[4] Rather,

---

[4] Plaintiff submits an affidavit notifying the Court that as of January 6, 2023, her husband received social security benefits,  Plaintiff and her husband have significant medical expenses not covered by insurance, that she has not had regular employment since June 30, 2022 (thus conceding that she has had "some" employment), and that her attorney is representing her on a contingency fee basis. (Imbrunone Aff., ECF No. 23-4 ¶¶ 4–7, 9. Pg ID 490–91.)

Plaintiff merely directs the Court to *Morrison* and predicates her argument on the Sixth Circuit's analysis.  However, the Court finds the present case distinguishable for one considerable reason:  Plaintiff was not a managerial-level employee at a retail store but was originally hired as the Director of Human Resources for the School District and later promoted to the position of Executive Director of Human Resources and District Support Services, where she remained in the position for almost a year.  (ECF No. 21 ¶¶ 16, 19, 56, Pg ID 427, 428, 436.)  Moreover, according to the employment agreement, Plaintiff's starting annual salary was $100,000.00.[5]  (ECF No. 26-2 § 4, at Pg ID 715.)  Because Plaintiff's salary was more executive level than managerial and Plaintiff would have the financial means to shoulder the financial burden of arbitration, the Court is satisfied that a substantial number of similarly situated persons would not be deterred from seeking to vindicate their statutory rights under these circumstances.  Thus, the fee-splitting clause in the arbitration agreement is enforceable.

---

[5] The Court takes judicial notice of a news article in The Hamtramck Review, which states that Plaintiff's annual salary was $115,900 (as of March 2022 and before her promotion).  *See* Charles Sercombe, *HPS Superintendent and Department Head Collect Salaries While on Leave*, The Hamtramck Review (Mar. 11, 2022), http://www.thehamtramckreview.com/hps-superintendent-and-department-head-collect-salaries-while-on-leave/ [https://perma.cc/3JYN-JJES]. The Court also notes that the retail manager in *Morrison* had an annual salary of $54,060, *see* 317 F.3d at 669, which is approximately a $46,000.00–$62,000.00 difference from Plaintiff's reported salaries.

E.   Whether to Stay the Remaining Claims

Although the FAA allows for concurrent litigation when some relevant issues are arbitrable, *see Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, (1985), the Supreme Court has determined that "[i]n some cases ... it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court ... as a matter of its discretion to control its docket."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983).  Exercising that discretion, several district courts within the Sixth Circuit have stayed the litigation of non-arbitrable claims pending the outcome of an arbitration. *See, e.g., Stacy v. H & R Block Tax Servs., Inc.*, No. 07–13327, 2008 WL 321300 (E.D. Mich. Feb. 4, 2008); *Vaughn v. Marshall,* No. 2:09 CV 00097, 2009 WL 3260382, at *4 (S.D. Ohio Oct. 8, 2009); *DRS Precision Echo, Inc. v. Mich. Magnetics, Inc.,* No. 1:02–cv–161, 2003 WL 1141900, at *5 (W.D. Mich. Jan.7, 2003).  Here, the Court will stay the proceedings to allow parties to resolve the majority of the claims and to determine whether further litigation on the remaining claims is desired by Plaintiff.

## III.  Conclusion

In summary, the Court finds no basis to dismiss Plaintiff's claims against any Defendant at this time.  The Court also finds that Plaintiff and Defendants agreed to arbitrate disputes arising under the employment contract's arbitration

19

clause, effective January 6, 2020, and that the scope of the arbitration clause in those agreements encompasses all statutory and civil rights claims, in addition to Plaintiff's claim for breach of contract.  Further, the Court finds that the FAA provides that the aforementioned claims are arbitrable and that the fee-splitting clause is enforceable under *Morrison*.  The Court is staying proceedings with respect to the claims of all Defendants in this matter, pending the outcome of arbitration.

Accordingly,

**IT IS ORDERED,** that "Defendants' Motion to Dismiss, or Alternatively for Summary Judgment, and to Compel Arbitration" (ECF No. 26) is **GRANTED IN PART AND DENIED IN PART** in that Plaintiff must arbitrate her statutory, civil rights, and breach of contract claims only.

**IT IS FURTHER ORDERED,** that this matter is **STAYED** pending arbitration.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 24, 2023

20